IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**ERIC KEVIN CULLUM,**

   **Plaintiff,**

v.                **Case No.: 2:18-cv-01238**

**ANDREW M. SAUL,**
**Acting Commissioner of the**
**Social Security Administration,**[1]

   **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

  This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. The matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Summary Judgment and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 8, 9).

---

[1] Pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the current Acting Commissioner of the Social Security Administration, Andrew M. Saul, is substituted for former Acting Commissioner, Nancy A. Berryhill, as Defendant in this action.

1

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g); **DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

### I.   Procedural History

In December 2014, Plaintiff Eric Kevin Cullum ("Claimant"), applied for DIB, alleging a disability onset date of December 11, 2014 due to "double neck fusion, right shoulder, left [k]nee, high blood pressure, depression, and left shoulder." (Tr. at 183-84, 215). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 109-13, 116-18). Claimant filed a request for an administrative hearing, which was held on May 22, 2017 before the Honorable Raymond Rodgers, Administrative Law Judge (the "ALJ"). (Tr. at 56-81). By written decision dated June 6, 2017, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from his alleged onset date through the date of the decision. (Tr. at 35-55). The ALJ's decision became the final decision of the Commissioner on June 20, 2018 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of Proceedings. (ECF Nos. 6, 7). Thereafter, Claimant filed a Memorandum in Support of Summary Judgment, (ECF No. 8), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 9)

to which Claimant filed a reply, (ECF No. 10). Consequently, the matter is fully briefed and ready for resolution.

## II.  Claimant's Background

Claimant was 50 years old on his alleged onset date and 52 years old on the date of the ALJ's decision. (Tr. at 49). He completed high school and communicates in English. (Tr. at 214, 216). Claimant previously worked as a foreman, mechanic, and salesman in the automobile repair industry. (Tr. at 73, 216).

## III.  Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id*. § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id*. § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id*. § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the

adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review," including the review performed by the ALJ. 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If such impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the

4

claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through September 30, 2018. (Tr. at 40, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since December 11, 2014, his alleged onset date. (Tr. at 40-41, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical spine status post remote anterior fusion with bone graft and plate fixation, cervical radiculopathy, degenerative disc disease of the lumbar spine status post L4-L5 discectomy and fusion, osteoarthritis of the hands and knees, neurocognitive disorder, anxiety, mood disorder, and pain disorder. (Tr. at 41-42, Finding No. 3). The ALJ also considered Claimant's hip, right shoulder, and abdominal pain; hyperlipidemia; and

hypertension, but concluded that the impairments were non-severe. (Tr. at 41-42).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 42-44, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps or stairs. The claimant may never climb ladders, ropes, or scaffolds. He can frequently turn his head. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently reach forward and laterally bilaterally. The claimant can occasionally reach overhead bilaterally. He can frequently handle and finger bilaterally. The claimant should have no exposure to hazardous machinery or unprotected heights. He is limited to simple, routine, and repetitive tasks. The claimant is limited to a low stress job defined as only occasional decision making and occasional changes in the work setting. He is limited to occasional interaction with co-workers and supervisors. The claimant should have no interaction with the general public.

(Tr. at 44-49, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform any of his past relevant work. (Tr. at 49, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 49-50, Finding Nos. 7 through 10). The ALJ considered that (1) Claimant was born in 1964 and was defined as a person closely approaching advanced age on the alleged disability onset date; (2) he had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 49, Finding Nos. 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant

6

could perform other jobs that existed in significant numbers in the national economy, including light-level work as a non-postal mail clerk, laundry folder, and price marker. (Tr. at 49-50, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 50, Finding No. 11).

## IV. Claimant's Challenge to the Commissioner's Decision

Claimant raises a single challenge to the Commissioner's decision, which concerns the ALJ's step five determination that Claimant could perform other jobs that existed in significant numbers in the national economy. (ECF No. 8 at 4). As stated above, the ALJ concluded at step five of the sequential evaluation, based on the testimony of a VE, that Claimant could perform jobs such as a non-postal mail clerk, laundry folder, and price marker notwithstanding the limitation in his RFC that he could only occasionally reach overhead. (*Id.* at 5-6). Claimant argues that although the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), the DOT clearly indicates that all three jobs require frequent reaching in all directions. (*Id.* at 6). Thus, Claimant states that Social Security Ruling 00-4p ("SSR 00-4p") required the ALJ to resolve the apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony to conclude at step five that Claimant was capable of performing the listed jobs. (*Id.*). Claimant relies upon *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), which held that an ALJ does not fulfill his affirmative duty merely because a VE responds "yes" when asked if the VE's testimony is consistent with the DOT; rather, the ALJ must identify any apparent conflicts and explain how they were resolved. (*Id.* at 6-7).

In response to Claimant's challenge, the Commissioner faults Claimant's counsel for not questioning the VE regarding the perceived conflict between her testimony and the DOT. (ECF No. 9 at 1-2). The Commissioner asserts that the standard for establishing disability under the Social Security Act is stringent and that substantial evidence supports the ALJ's determination that Claimant could perform the jobs of non-postal mail clerk, laundry folder, and price marker because, according to the Commissioner, the DOT's descriptions of those jobs "do not describe activities that obviously require overhead reaching." (*Id.* at 5-6, 8). The Commissioner contends that while a person performing such jobs could conceivably be required to reach overhead at times, the bulk of the work requirements listed by the DOT seem to be performed at or below shoulder level, which the Commissioner states is consistent with the ALJ's RFC assessment that Claimant could frequently reach forward and laterally and occasionally reach overhead. (*Id.*). The Commissioner posits that there was no obvious or apparent conflict between the VE's testimony and the DOT; therefore, the ALJ was not obligated to seek further explanation. (*Id.* at 9).

Claimant filed a reply to the Commissioner's response, pointing out that the Commissioner's position that Claimant had the burden of challenging the substance of the VE's testimony at the hearing was explicitly rejected in *Pearson*. (ECF No. 10 at 1-2). In addition, Claimant asserts that the Commissioner's two citations to cases from other circuits are irrelevant because *Pearson* is binding precedent in this Court and the facts are directly on point in Claimant's case. (*Id.* at 2). Claimant adds that district courts in this circuit have occasionally declined to apply *Pearson*, but only in cases in which the ALJ sought additional testimony to resolve the conflict, or no conflict actually existed. (*Id.* at 2-3). However, when the court could not distinguish *Pearson* from the case at

8

bar—such as in the instant action—*Pearson* was controlling. As to the Commissioner's argument that the job duties of a non-postal mail clerk, laundry folder, and price marker do not appear to include overhead reaching, Claimant contends that the law is clear that the Court cannot compare the ALJ's findings to the DOT and draw independent conclusions to resolve the conflict for the ALJ. (*Id.* at 3-4). Therefore, Claimant argues that this case must be remanded to the Commissioner for correction of the ALJ's error. (*Id.* at 4).

V.  **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issue in dispute.

**A. Treatment Records**

In 2011, Claimant underwent an anterior cervical discectomy and fusion at C5 through C7. (Tr. at 18). He did well at first, but on July 23, 2015, Claimant presented to the emergency room at Marietta Memorial Hospital with neck pain that had been present for one week. (Tr. at 382). Claimant stated that his pain also occasionally radiated into his arms. (*Id.*). He was referred to a neurosurgeon, Abdi S. Ghodsi, M.D., who ordered an MRI of Claimant's cervical spine. (Tr. at 414). The MRI, taken on August 28, 2015, showed new focal right foraminal disc herniation abutting the exiting right C8 nerve root. (Tr. at 415). Claimant also had mild to moderate foraminal narrowing at C5-6. (*Id.*).

Claimant followed up with Dr. Ghodsi on October 29, 2015, reporting pain extending from his right shoulder into his right arm, as well as numbness in his forearm and some of his fingers. (Tr. at 419). Dr. Ghodsi ordered further testing, including an EMG and CT scan, which showed chronic right radiculopathy at C7, possible mild

9

polyneuropathy, and lumbar spine issues. (Tr. at 422, 439). Dr. Ghodsi recommended monitoring of Claimant's cervical spine and physical therapy to address his lumbar spine conditions. (Tr. at 442).

On May 25, 2016, Claimant continued to complain to Dr. Ghodsi that he suffered pain descending from his right shoulder into his right arm. (Tr. at 510). Additionally, as Claimant's low back pain and left leg symptoms were no longer tolerable, Dr. Ghodsi suggested a L4-5 discectomy and fusion, which Claimant underwent on July 5, 2016. (Tr. at 18, 463, 512).

Over a year later, on June 22, 2017, Claimant again reported neck pain, as well as right arm numbness and tingling that extended into his fingers. (Tr. at 18, 21). Claimant explained that he did well after his cervical fusion, but his symptoms of numbness and tingling appeared in the past few months. (Tr. at 21). Claimant underwent electromyography and nerve conduction studies. On July 25, 2017, neurosurgeon Jay A. Bauerle, M.D., diagnosed Claimant with cervical radiculopathy, carpal tunnel syndrome, lesion of the ulnar nerves, and paresthesia. (Tr. at 17)

**B. Evaluations and Opinion Evidence**

On February 11, 2015, Claimant presented for an Internal Medicine Examination performed by Stephen Nutter, M.D. Claimant reported having neck pain since childhood, but stated that the pain was exacerbated in 2010 when he injured his neck installing a gas tank at work. (Tr. at 373). Claimant described his neck pain as radiating into his left arm and stated that his pain was aggravated by reaching overhead. (*Id.*). On examination, Claimant had pain, tenderness, and decreased range of motion in his cervical spine and shoulders, but no sensory deficits or definite evidence of radiculopathy. (Tr. at 377). Dr. Nutter diagnosed Claimant with chronic cervical and

10

lumbar strain and degenerative arthritis. (*Id.*).

On March 6, 2015, Tarun Ray assessed Claimant's RFC for the West Virginia Disability Determination Service based upon a review of Claimant's records. He concluded that Claimant could perform light work with postural limitations, but found that Claimant did not have any further reaching restrictions. (Tr. at 88-90). On June 5, 2015, Caroline Williams, M.D., opined that Claimant could perform a limited range of medium work, also without any reaching restrictions. (Tr. at 102-04).

### C. Claimant's Statements

Claimant testified at his administrative hearing on May 22, 2017 that, although he regained the use of his arms following his neck surgery in 2011, his pain actually increased. (Tr. at 62). Further, Claimant stated that he began losing the ability to use his right arm again in 2014 and 2015. (*Id.*). He explained that if he used his right arm even "a little bit," it became "numb and tingly." (*Id.*).

### D. Vocational Expert Testimony

The ALJ questioned the VE at Claimant's administrative hearing as to whether someone with Claimant's characteristics and RFC, including the restriction that the person could occasionally reach overhead, could perform any jobs. The VE responded that such person could not perform Claimant's past work, but could perform alternative jobs; including, the positions of non-postal mail clerk, DOT 209.687-026; laundry folder, DOT 369.687-018; and price marker, DOT 209.587-034. (Tr. at 74). The VE affirmed that her testimony was consistent with the DOT, and the ALJ did not ask any further questions regarding the jobs or the DOT. (Tr. at 75).

### VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is

based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the United States Court of Appeals for the Fourth Circuit defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

### VII. Discussion

Claimant asserts that the ALJ failed to resolve an apparent conflict between the VE's testimony that someone who could occasionally reach overhead was capable of performing the jobs of non-postal mail clerk, laundry folder, and price marker, despite the DOT's description that such jobs require frequent reaching. As discussed, an ALJ must ascertain at step four of the sequential evaluation whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(f). If so, the claimant has established a *prima facie* case of disability, and the burden shifts to

the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

"To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ 'rel[ies] primarily' on the [DOT]". *Pearson*, 810 F.3d at 207 (quoting SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). "The ALJ may also use a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id*. Pursuant to SSR 00-4p, an ALJ must inquire on the record whether the VE's testimony conflicts with the DOT and the ALJ must identify and elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT before relying on the VE's testimony as evidence to support a decision regarding whether the claimant is disabled. *Id.*

Claimant cites to *Pearson* in support of his position that the ALJ failed to comply with SSR 00-4p. In *Pearson*, a VE testified that a person with the claimant's limitations could perform jobs which, by DOT definition, required frequent reaching. However, as provided in the hypothetical, the claimant could only occasionally reach upward with one of his arms. *Pearson,* 810 F. 3d at 206. The ALJ did not identify the apparent conflict

13

between the VE's testimony and the DOT and did not elicit an explanation from the VE to resolve the conflict. As a result, the Fourth Circuit found that the VE's testimony did not constitute substantial evidence in support of the ALJ's decision at step five of the disability determination process. *Id.* at 211.

In this case, the ALJ asked the VE at Claimant's administrative hearing whether someone with Claimant's characteristics and RFC, including the restriction that the person could occasionally reach overhead, could perform any jobs. The VE responded that such person could not perform Claimant's past work, but could perform alternative jobs; such as, the positions of a non-postal mail clerk, DOT 209.687-026; laundry folder, DOT 369.687-018; and price marker 209.587-034. (Tr. at 74). The VE affirmatively acknowledged that her testimony was consistent with the DOT. (Tr. at 75). The ALJ concluded that based on such testimony, he fulfilled his duty under SSR 00-4p. Thus, the ALJ determined that Claimant could make a successful adjustment to other work that existed in significant numbers in the national economy and was not disabled under the Social Security Act. (Tr. at 50).

According to the DOT, all three of the jobs identified by the VE require frequent reaching. DOT 209.687-026 (non-postal mail clerk), 1991 WL 671813; DOT 369.687-018 (laundry folder), 1991 WL 673072; DOT 209.587-034 (price marker), 1991 WL 671802. However, as provided in the hypothetical, Claimant could only reach overhead occasionally. (Tr. at 73). Like the error in *Pearson*, the ALJ did not identify the apparent conflict and elicit an explanation from the VE before relying on the VE's testimony to find that Claimant could perform the listed jobs.

The Commissioner places the blame on Claimant's counsel for not raising the issue during his cross-examination of the VE. (ECF No. 9 at 1-2). However, as Claimant

14

noted, the Fourth Circuit explicitly rejected this argument in *Pearson*. A claimant is not required to raise conflicts between the VE's testimony and the DOT at the administrative hearing; rather, that duty rests with the ALJ. *Pearson*, 810 F.3d at 210 (stating that SSR 00-4p requires the ALJ, not the claimant, to identify and resolve obvious or apparent conflicts between the VE's testimony and the DOT, even if the VE states that the testimony is consistent with the DOT and regardless of whether the claimant raises the issue at the hearing).

The Commissioner also argues that there was no apparent conflict between the DOT and the VE's testimony, because the jobs that the VE identified did not appear to require anything more than "some" overhead reaching. (ECF No. 9 at 7-8). The Fourth Circuit has plainly rejected this position, as well. In *Pearson*, the Commissioner similarly asserted that no conflict existed, because the jobs listed by the VE were described in the DOT as requiring some form of frequent reaching, and the claimant could frequently reach in all directions, with a single exception—he could only occasionally reach overhead with one of his arms. *Pearson*, 810 F.3d at 211. The Fourth Circuit explained that, although the DOT did not expressly state that the occupations identified by the VE required frequent bilateral overhead reaching, the DOT's broad definition of "reaching" meant that the occupations certainly may require such reaching. *Id*. Consequently, even though the reviewing court likely was capable of estimating the demands of each job, the authority to resolve the conflict belonged to the ALJ, who was responsible for eliciting an explanation from the VE as to whether the occupations did, in fact, require frequent bilateral overhead reaching. *Id*.

The Commissioner's attempt to circumvent the *Pearson* holding and analogize this matter to non-binding precedent, including a decision by the United States Court of

15

Appeals for the Ninth Circuit and an unpublished decision by the United States District Court for the Eastern District of North Carolina, is unavailing. Not only are the cases cited by the Commissioner inapplicable to the facts of this case, but they are of no precedential value in this Court. Rather, as stated by Claimant, the same error that prompted the Fourth Circuit to remand the Commissioner's decision in *Pearson* exists in this case. The DOT states that the jobs identified by the VE require frequent reaching, and it does not delineate between the types of reaching required. Thus, this Court cannot speculate based on the job duties listed in the DOT whether frequent overhead reaching is required. *Pearson* explicitly counsels against making such independent post-hoc determinations. Rather, like *Pearson*, this case must be remanded in order for the Commissioner to solicit an explanation for the conflict, and, if "the expert's explanation is reasonable, the ALJ can resolve the apparent conflict with the [DOT] and rely on the expert's testimony." *Pearson*, 810 F.3d at 211. Conversely, if "the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits." *Id.*

Therefore, because the ALJ's decision lacks sufficient analysis and explanation for the ALJ's conclusion that Claimant could perform the jobs of non-postal mail clerk, DOT 209.687-026; laundry folder, DOT 369.687-018; and price marker 209.587-034, the undersigned **FINDS** that the Commissioner's decision is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reconsider or elaborate on the step five finding.

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 10), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections

shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**  June 25, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge